UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEQUOIA FINANCIAL SOLUTIONS, INC.,

    Plaintiff,

v.

DONALD E. STEWART, et al.,

    Defendants.
                                        /

Case No. 2:16-cv-10731

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [30]**

Plaintiff Sequoia Financial Solutions, Inc. filed an amended complaint against Defendants Donald and Heather Stewart, CitiMortgage, Inc, the Michigan Homeowner Assistance Nonprofit Housing Corporation ("MHA"), and Capital One Bank [USA] N.A. Am. Compl., ECF No. 16. Sequoia alleges that the Stewarts failed to make payments on a note, secured by a mortgage (the "Instruments"), for 4352 Ninth Street, Luna Pier, Michigan (the "Property"). *Id.* Sequoia and MHA entered a valid resolution of the case. Order, ECF No. 21. The remaining Defendants did not answer the amended complaint. Sequoia received Clerk's Entries of Default against them, and now moves for Default Judgment. Mot., ECF No. 30. For the reasons stated below, the Court will grant the motion.

**BACKGROUND**

Title to the Property vested in Donald Stewart by a Warranty Deed dated August 23, 2002. ECF No. 30-1. That day, he executed a promissory note for $96,640.00 to Mortgage Electronic Registration Systems ("MERS"), nominee for Household Bank, *see* ECF No. 30-2, and a mortgage to MERS with the Property serving as collateral ("First Instruments"). *See* ECF No. 30-3. That same day, he and Heather Stewart, married before 2002,

executed a purchase money mortgage for $24,160.00 to MERS with the Property serving as collateral ("Second Instruments"). *See* Am. Compl. ¶ 14, ECF No. 16.

On February 22, 2003, MERS assigned the First Instruments to CitiFinancial. ECF No. 30-4. On January 10, 2003, MERS assigned the Second Instruments to CitiFinancial per a recorded assignment which erroneously lists their principal balance as $241,600.00. *See* Am. Compl. ¶ 17, ECF No. 16. CitiFinancial subsequently merged into Defendant CitiMortgage and acquired both sets of Instruments. *Id.* ¶ 18.

On September 17, 2010, Capital One obtained judgment for $1,456.54 against Donald Stewart, Monroe Circuit Court Case No. 10-M-20B-GC, recorded on the Property. *Id.* ¶ 19. On February 27, 2012, CitiFinancial assigned the First Instruments to Granite Loan Acquisition, *see* ECF No. 30-5, which assigned them to Sequoia on April 24, 2012, *see* ECF No. 30-6.

On August 15, 2012, the Stewarts executed a Loan Modification Agreement ("the Agreement") with Sequoia in which Donald Stewart stipulated that the principal balance of the First Instruments was $82,133.80, with total arrears of $13,423.63, due since July 23, 2011. ECF No. 30-7. Pursuant to the Agreement, the Stewarts agreed to make payments on the Instruments on a modified principal balance of $64,000.00, and to maintain homeowners insurance on the Property, providing a copy of the policy to and designating Sequoia as the beneficiary of any applicable insurance proceeds. *Id.* at 1–2. The Stewarts also agreed not to take certain actions like incurring additional debt and/or other enforcement of a secured interest — including a home equity loan, second mortgage, tax lien, judgment or other encumbrance against the Property. *Id.* at 3.

In the Agreement, Sequoia reserved the right to accept or reject payments, without

prejudice to its other rights under the Agreement, in the event that the Stewarts breached the Agreement and/or the First Instruments. *Id.* Sequoia's acceptance of funds would not constitute a waiver of default or of acceleration of the First Instruments. *Id.* at 3. The Stewarts agreed that their failure to comply with the Agreement and/or First Instruments would constitute a breach of the Agreement, which would be deemed null and void allowing Sequoia to pursue all remedies available under the First Instruments, including the original amounts due under them, and rights in the Property. *Id.*

On September 19, 2013, the Stewarts executed a note for $17,900.34 with MHA, secured by a mortgage on the Property as collateral. *See* Am. Compl. ¶ 30, ECF No. 16. The loan went into default and Sequoia filed suit to enforce the Instruments against the Defendants. *Id.* Sequoia accelerated the entire principal balance of the First Instruments, plus costs and fees, for the below amounts as of the date of suit:

<u>Principal</u>:

| | |
|---|---|
| Principal Balance: | $82,133.80 |
| Less post-suit, partial borrower payments from 3/9/16 to 8/4/16: | $3,712.18 |
| Total principal balance: | $78, 421.62 |
| | |
| Date of Last Payment: | 11/6/15 |
| Late Charges: | $77.34 |
| | |
| Force Placed Insurance Market Amer. Ins., Policy No. FP99801974 $45,000.00 coverage Premiums paid 6/5/13 – present: | $1,383.75 |

Mot. Def. 5–6, ECF No. 30; *see* Verification, ECF No. 30-8.

Sequoia now seeks declaratory relief, rescission of the Agreement, judicial foreclosure, and related relief (Count I), possession of the Property (Count II), and

judgment as to Donald Stewart (Count III). Am. Compl., ECF No. 16.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs default judgments. Under Rule 55(a), the Court considers the well-pled allegations of the complaint to be admitted by a party in default. *Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 756 (E.D. Mich. 2014); *see also* Fed. R. Civ. P. 8(b)(6) (providing that "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court considers Sequoia's well-pled allegations to be admitted by the Defendants in light of their default.

## DISCUSSION

A court sitting in diversity jurisdiction must apply substantive "state law in accordance with the controlling decisions of the state supreme court." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007). Here, the parties are diverse and the amount in controversy exceeds $75,000. The Court will therefore apply Michigan law. The Court also notes that the Stewarts are not subject to protection from the Service Members Civil Relief Act, which could bar entry of default judgment. *See* 50 U.S.C. § 3931.

I. Sequoia's Right to Enforce the Instruments

Under Michigan Law, "[a] mortgage assignee has the same rights as the assignor[.]" *Burkhardt v. Bailey*, 260 Mich. App. 636, 653 (2004). As the assignee, Sequoia may enforce the Instruments with the same rights as the assignor. *See In re Pazdzierz*, 718 F.3d 582, 588 (6th Cir. 2013) (holding that "the transfer of a promissory note 'vests in the transferee any right of the transferor to enforce the instrument'") (quoting Mich. Comp. Laws § 440.3203(2)). Since the Note is prima facie valid, certain, and undisputed as to the

4

sum payable, time for payment, its execution, and its ownership, the Note is fully enforceable by Sequoia. *Scott v. Zimmerman*, No. 296077, 2011 WL 1446100, at *6 (Mich. Ct. App. Apr. 14, 2011).

In addition, Sequoia may enforce the Instruments without a recorded instrument because the Note and Mortgage were transferred together. *See Bank of N.Y. Mellon v. Becker-Zabavski*, No. 319432, 2015 WL 1224294, at *2 (Mich. Ct. App. Mar. 17, 2015) ("Because a mortgage is intended to secure repayment of the underlying note, when a note secured by a mortgage is transferred to a new owner, the transfer of the note necessarily includes the transfer of a beneficial interest in the mortgage.") Finally, the Instruments are due now, and Sequoia made demand by filing the present suit. *Select Commercial Assets, LLC v. Carrothers*, No. 326968, 2016 WL 3419018, at *5 (Mich. Ct. App. June 21, 2016) (holding that mortgagee need not make a demand for payment prior to bringing suit when, "[by] the plain terms of the note, defendant was in default").

II. Damages

Sequoia bears the burden to prove damages. *See Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110–11 (6th Cir. 1995). In addition, Rule 55 provides that the Court may hold a hearing to "determine the amount of damages" in a default judgment. Fed. R. Civ. P. 55(b)(2). "[I]f sufficient evidence is submitted to support the request for damages, or if the amount claimed is one capable of ascertainment from definite figures in documentary evidence or affidavits," then no hearing is required. *Juana's Packing Co. v. Fed. Bakers USA*, No. 1:09-CV-301, 2010 WL 310765, at *1 (W.D. Mich. Jan. 21, 2010) (citations omitted); *see also Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (unpublished). No hearing is necessary here since Sequoia has provided sufficient

evidence of sum certain damages. Sequoia has not provided sufficient evidence, however, to prove the payment of "Force Placed Insurance," the existence of the Stewarts' note executed for $17,900.34 with MHA, the purchase money mortgage for $24,160.00 to MERS with the Property serving as collateral, or the judgment for $1,456.54 obtained by Capital One against Donald Stewart in Monroe Circuit Court. *See* Mot. Def. 5–6, ECF No. 30; *see also* Am. Compl. ¶¶ 14, 19, 30, ECF No. 16. The Court will require additional and sufficient documentary evidence for those claims prior to entering final monetary damages.

III.    Count I – Declaratory Relief, Rescission of the Agreement, and Judicial Foreclosure

   A.    Declaratory Judgment

In Count I, Sequoia pled a claim for rescission of the Agreement. Am. Compl. ¶¶ 32–39, ECF No. 16. In its motion for default judgment, however, it requests that the Court instead declare the Agreement null and void, and thus not require Sequoia to tender or credit any benefits it received under the Agreement. Mot. Def. 10–11, ECF No. 30. Sequoia argues that the Stewarts' noncomplaince with the Agreement provides a basis for that ruling, but cites cases that do not directly support that contention, especially considering the posture of the instant case. *See, e.g.*, *Barter v. U.S. Bank, N.A.*, No. 10-cv-11476, 2011 WL 124502, at *4 (E.D. Mich. Jan. 13, 2011) (addressing the breach of a loan modification agreement to find a lack of fraud in a foreclosure proceedings); *Colston v. Wells Fargo Bank, N.A.*, No. 2:10-cv-13278, 2012 WL 1392335, at *4 (E.D. Mich. Apr. 20, 2012) (same); *Lamothe v. Wells Fargo Bank, N.A.*, No. 15-cv-10701, 2015 WL 4066766, at *3 (E.D. Mich. July 2, 2015) (granting defendant's motion to dismiss after finding a trial payment period was not signed by either party), *aff'd,* (Mar. 24, 2016); *Voydanoff v. Select Portfolio Servicing, Inc.*, No. 298098, 2011 WL 6757841 (Mich. Ct. App. Dec. 22, 2011)

(finding a proposed loan modification agreement did not ripen into a binding agreement because it lacks defendant's signature); *Goss v. ABN*, 549 F. App'x 470, 472 (6th Cir. 2013) (same); *Heikkinen v. Bank of America, N.A.*, No. 11-cv-12532, 2012 WL 628608, at *6 (E.D. Mich. Feb. 27, 2012) (same).

Accordingly, the Court will address the request for rescission as stated in the amended complaint. "Under Michigan law, in order for a party to rescind the contract, there must be a material breach affecting a substantial or essential part of the contract." *P.A.L. Inv. Grp., Inc. v. Staff-Builders, Inc.*, 118 F. Supp. 2d 781, 787 (E.D. Mich. 2000). The rescinding party need not necessarily return payments tendered under the contract. *See Winter v. United Parcel Serv.*, Inc., No. 14-10555, 2015 WL 8478460, at *3 (E.D. Mich. Dec. 10, 2015) ("[t]ender of benefits under the provisions to be rescinded is not a condition precedent to a claim for rescission."). "[R]escission returns the parties to the status quo; i.e., it places the parties in the position they occupied before the transaction in question." *Johnson v. QFD, Inc.*, 292 Mich. App. 359, 374 n.5 (2011). Here, the parties can be restored to the prior positions by awarding damages to Sequoia on the original sums due on the Instruments.

The Stewarts committed a material breach by failing to make payments under the Agreement. Sequoia is therefore entitled to rescind the Agreement. It is not clear, however, the amount of funds paid by MHA because no proof was offered of the note executed with MHA; it is mentioned in a single paragraph in the amended complaint. *See* Am. Compl. ¶ 30, ECF No. 16. The Stewarts have certainly waived any claim to those funds. But to the extent necessary, the funds paid by MHA shall offset the original note.

B.  Judicial Foreclosure

Federal court foreclosures are governed by 28 U.S.C. § 2001. *See United States v. Jokinen*, 124 F.3d 200, at *2 (6th Cir. 1997) (table). Since the Court sits in diversity jurisdiction, however, Michigan substantive law applies, and it provides a six-month redemption period. Mich. Comp. Laws § 600.3140; *see, e.g.*, *Jackson v. U.S. Bank Loan Serv.*, No. 09-12716, 2009 WL 2447485, at *3 (E.D. Mich. Aug. 6, 2009); *see also Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 567 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1454 (2016). To hold otherwise would undermine Michigan's public policy in favor of providing a right of redemption. Moreover, unlike cases in which a federal statute explicitly provides no redemption period, there are no important federal interests implicated that would require the Court to apply federal law instead of Michigan law. And if the Court were to apply federal law and refuse to apply Michigan's right of redemption, the result would encourage forum shopping: identically situated Michigan mortgagors would possess different substantive legal rights to redemption depending on whether their foreclosure was brought in state or federal court. To avoid that inequitable and unjust result, the Court will apply Michigan substantive law governing the right of redemption.

The Stewarts did not fulfill their obligations under the Instruments, which are in default, and Sequoia acted to protect its rights. Sequoia holds a legal interest in the Property. All conditions precedent to the suit occurred, were fulfilled, or were waived. Sequoia gave required notice to the Stewarts. Heather Stewart's dower is subject to Sequoia's purchase money mortgage. Sequoia's mortgage is superior to subsequent claims to the Property. *See United States v. Certain Real Properties Located at 9930 Archdale, Detroit, Wayne Cty., Mich.*, No. 07-10572, 2008 WL 2397649, at *2 (E.D. Mich. June 6,

2008) (citing Mich. Comp. Laws § 565.29). At sale, Sequoia may place credit bids on debt owed. *New Freedom Mortg. Corp. v. Globe Mortg. Corp.*, 281 Mich. App. 63, 68 (2008), *overruled in part, on other grounds, Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74 (2016). Sequoia's recorded Mortgage in the Property, therefore, is first in time and right to the claims of the Stewarts, and Sequoia is entitled to judicially foreclose the Property as holder of the Instruments in default, subject to the Stewarts' right of redemption under Michigan law.

IV.     Count II – Possession of the Property

Sequoia or any purchaser is entitled to post-sale possession of the Property, subject to the Stewarts' right of redemption under Michigan law. *See* Mich. Comp. Laws § 600.3140; *see also* 28 U.S.C. § 1651 (authorizing courts to issue all writs necessary or appropriate in aid of respective jurisdictions, agreeable to usages and principles of law). "[O]nce [the] foreclosure is complete and the redemption period following the foreclosure has expired, a former owner loses all right, title, and interest in and to the mortgaged property." *Munaco v. Bank of Am.*, 513 F. App'x 508, 510–11 (6th Cir. 2013). Following sale, the Court will maintain jurisdiction to hear and determine all questions respecting the title, the possession, or the control of the Property.

V.      Count III – Judgment as to Donald Stewart

Sequoia is entitled to judgment as to Donald Stewart for the sums due in the Agreement, without waiving other remedies. *See Riverview Co-op., Inc. v. First Nat. Bank & Trust Co. of Mich.*, 417 Mich. 307, 311–12 (1983) (holding that a plaintiff may pursue multiple remedies simultaneously so long as they do not receive "double redress for a single injury"). Sequoia may move for a final monetary judgment as to Donald Stewart

when it moves to confirm the sale of the Property.

## ORDER

**WHEREFORE** it is hereby **ORDERED** that Plaintiff's Motion for Default Judgment [30] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that:

1. Per Count I, Plaintiff holds and owns the Instruments, the senior interest in the Property, and may enforce them as set out in the Instruments, subject to Defendants' right of redemption. Mich. Comp. Laws § 600.3140.

2. Plaintiff holds its valid first position senior lien upon all property, rights to property, claim or estate of the Defendants against the Property and its improvements, buildings, fixtures, and appurtenances located within this District and Division, secured as collateral under the Instruments, including rents derived from the Property, particularly described as: Lots 86 and 93, except the West 1.5 feet, Lakewood Replat, according to the plat thereof, as recorded in Liber 1 of Plats, Page 53, Monroe County Records, Address: 4352 Ninth Street, Luna Pier, MI 48133. No. 58-51-140-085-00, subject to the Stewarts' right of redemption. Mich Comp. Laws § 600.3140.

3. Plaintiff's mortgage is prior, paramount, and superior to all rights, claims, liens, interests, encumbrances, and equities of the Defendants and all persons, firms, or corporations claiming by, through, or under the Defendants or any of them. The Mortgage is foreclosed against the Property per 28 U.S.C. § 2001 *et seq.*, subject to the Stewarts' right of redemption. Mich. Comp. Law 600.3140.

4. Under Fed. R. Civ. P. 53 and Mich. Comp. Laws § 600.6091, Attorney Daniel McLean and/or the Law Offices of Jerome & McLean, and/or their designee is appointed as Special Master and is authorized and directed to offer and sell the Property, its improvements, buildings, fixtures, and appurtenances for public sale, at the Monroe County Courthouse, at the usual hour and location for public sale, following complete publication of the advertised notice of the public sale of the Property, once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in Monroe County. Michigan's statutory six-month period of redemption applies to this sale. Mich. Comp. Laws § 600.3140.

5. Per 28 U.S.C. §§ 564 and 566, the Special Master may exercise the same powers to conduct the sale as any local official or party conducting foreclosure sales, to yield the best sale price of the Property through free, fair, and competitive bidding.

6.  At the time of sale, the successful bidder(s) will deposit with the Special Master a deposit of at least ten percent of the successful bid in cash, cashier's check, or certified check, payable to Plaintiff's counsel of record. To be permitted to bid, bidders must present proof to the Special Master that they can comply with this requirement. Plaintiff may place credit bids against the sums due on the Instruments without tender of cash.

7.  A third-party bidder/purchaser will pay the balance of the purchase price for the Property in cash, cashier's check, or certified check, payable to Plaintiff's attorney, within five days after the sale date. If the purchaser defaults on this or any other condition of sale, then the deposit is forfeited and shall be applied to expenses of sale. The Property may then be re-offered for sale or sold to a second highest bidder at Plaintiff's discretion.

8.  If Plaintiff is the purchaser, the Special Master will credit on Plaintiff's bid the total sums due to Plaintiff, or such portion necessary to fully pay Plaintiff's bid. If not the purchaser, Plaintiff will advance all subsequent costs of this action, for which it will be reimbursed by the Special Master.

9.  Following completion of the sale, the Special Master will execute a Report of Sale, for filing with the Clerk of Court, subject to confirmation by the Court.

10. Plaintiff may assign the judgment and/or credit bid by executing an assignment prior to issuance of an order confirming the sale of the Property, without further order of the Court.

11. Per Fed. R. Civ. P. 70, upon motion following the sale, the Court will enter an order, subject to Michigan's redemption period, confirming the sale of the Property, conveying title to the Property to the purchaser at sale, which shall be recorded at the local land records registry with the same legal effect as a conveyance or judgment under Michigan law, such as Mich. Comp. Laws §§ 565.401 and 600.2935.

12. A successful third-party bidder at the sale shall pay, in addition to the amount of the bid, any documentary stamps and land registry fees and like costs, as provided by law.

13. Upon entry of the confirmation order, the sale proceeds will be applied to Plaintiff's costs and disbursements of this case, expenses of sale, including documentary stamps affixed to the order if applicable, the total sum due to Plaintiff less the items paid, plus interest at the legal rate from this date to the sale date.

14. Per Count II, any purchaser at the sale is granted possession of the Property, its improvements, buildings, fixtures, and appurtenances, subject to Michigan's

redemption period. All other parties, occupants, entities and others will vacate the Property following the sale, as directed by the U.S. Marshall and/or local law enforcement officers, their deputies and agents, who are ordered to take any and all action to remove anyone and their belongings from the Property, with whom Plaintiff or other purchaser at sale is authorized to coordinate to take all actions reasonably necessary to effectuate same. Refusal or failure to vacate the property is punishable by contempt.

15. Until the Property is sold and the successful bidder takes physical possession, all other parties, occupants, entities and others will take all reasonable steps necessary to preserve the Property in its current condition, including its buildings, improvements, fixtures and appurtenances, including, without limitation, maintaining fire and casualty insurance policies on the Property and providing proof of insurance when requested by Plaintiff. All parties, occupants, entities and others will not commit waste, damage or vandalism against the Property or do anything to impair or reduce its value or marketability, including but not limited to recording any instruments, publishing any notice, or taking any other action tending to adversely affect the value of the Property or tending to deter or discourage potential bidders from participating in the sale and shall not cause or permit anyone else to do so. Violation of the above is punishable by contempt of Court.

16. If any person fails or refuses to remove their personal property from the Property as specified in this Order, then any personal property remaining on the Property is deemed forfeited and abandoned and Plaintiff or other purchaser at sale is authorized to remove the personal property and dispose of it in any manner it sees fit, including sale, in which case the proceeds of the sale are to be applied first to the expenses of sale, with the balance being distributed as described within this Order.

17. Per Count III of the Complaint, Donald Stewart is personally liable for the above debt under the Note and Mortgage. Upon the confirmation of the sale of the Property, the Court will enter final damages judgment against him, if any part of the debt is left after applying the amount received upon the sale of the Property for which execution shall issue, without notice to Defendant Donald Stewart.

18. Plaintiff will move for an order on its costs and fees within fourteen days after entry of a final order confirming the foreclosure sale.

19. The Court retains jurisdiction over this case for purposes of making any further orders and decrees to enforce this order not limited to confirming the sale, awarding fees and costs and other relief as needed.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Court Judge

Dated: January 11, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 11, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager (313) 234-2680